IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 10-00131-01-CR-W-FJG |
| | ) | |
| DENNY RAY HARDIN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION TO DENY
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the court is Defendant's Motion to Suppress Evidence (Doc. No. 76). For the following reasons, Defendant's motion should be denied.

### *I. BACKGROUND*

On May 5, 2010, an Indictment was returned charging Defendant with: eleven counts of creating fictitious obligations, in violation of 18 U.S.C. § 514; four counts of mail fraud affecting a financial institution, in violation of 18 U.S.C. § 1341; and six counts of mail fraud, in violation of 18 U.S.C. § 1341 (Doc. No. 1).

On June 6, 2011, Defendant filed a motion to suppress (Doc. No. 76). The government responded to Defendant's motion on June 14, 2011 (Doc. No. 84). On June 20, 2011, Defendant filed a reply to the Government's response (Doc. No. 96). I held a hearing on June 23, 2011 to seek clarification on the items Defendant wished to suppress and the legal authority on which he based his requests (See Doc. No. 85). Based on information ascertained at the hearing and the Government's subsequent notices (Doc.

1

Nos. 103, 127), I scheduled a suppression hearing to take evidence on the following topics:

- the five search warrants issued by United States Magistrate Judge John Maughmer;
- statements Defendant made to his state probation officer, Hope Peterson;
- recordings of phone calls Defendant made from state and federal facilities;
- audio recordings of Defendant discussing the bonded promissory note process obtained from the website, www.AmericansRepublicParty.org;
- video recordings of Defendant discussing the bonded promissory note process obtained from the website, www.AmericansRepublicParty.org;
- various documents, including documents written by Defendant, obtained from the website, www.AmericansRepublicParty.org;
- documents obtained through an October 30, 2008, trash pull;
- letters and other documents sent by Defendant to law enforcement and the courts;
- mail both to and from Defendant that was copied while he was in state and federal custody;
- audio recordings of Melinda Harrington obtained from the website, www.AmericansRepublicParty.org; and
- a video recording of Melinda Harrington discussing the bonded promissory note process obtained from the website, www.AmericansRepublicParty.org.

(Doc. No. 106).[1] Before the suppression hearing was conducted, the Government filed a brief to outline its order of proof and legal arguments relative to each of the above-listed issues (Doc. No. 129).

I conducted an evidentiary hearing on July 28, 2011. The government appeared by Assistant United States Attorneys Brian Casey and Patrick Daly. Defendant appeared pro se, along with standby counsel Anita Burns. The government called the following

---

[1]The Government advised the Court that it would not be seeking to introduce evidence obtained from the following sources in its case-in-chief at trial: (1) statements made by Defendant to probation officer Melissa Boss; and (2) statements made by Defendant during mental health examinations while in state and federal custody.

witnesses to testify: (1) FBI Special Agent Nathan VanSickle; (2) Kansas City, Missouri Police Department Detective Kent Morton; (3) Kansas City, Missouri Police Department Detective Kenneth Campo; (4) Analyst Johnny Woodward; (5) Missouri Probation and Parole Officer Hope Peterson; (6) Department of Education, Office of the Inspector General Assistant Special Agent Timothy Hermsen; and (7) FBI Special Agent Trisha DeWet.

The following exhibits were marked and admitted into evidence:

| | |
|---|---|
| Government's Exhibit 1: | Certified copy of search warrant, application and affidavit in support, 08-SW-00144-JTM |
| Government's Exhibit 2: | Certified copy of search warrant, application and affidavit in support, 08-SW-00145-JTM |
| Government's Exhibit 3: | Certified copy of search warrant, application and affidavit in support, 08-SW-00146-JTM |
| Government's Exhibit 4: | Certified copy of search warrant, application and affidavit in support, 08-SW-00148-JTM |
| Government's Exhibit 5: | Certified copy of search warrant, application and affidavit in support, 09-SW-00248-JTM |
| Government's Exhibit 6: | Video (Part I) of Defendant meeting with Probation Officer Hope Peterson on November 4, 2008 |
| Government's Exhibit 7: | Video (Part II) of Defendant meeting with Probation Officer Hope Peterson on November 4, 2008 |
| Government's Exhibit 9: | August 31, 2009 e-mail from Kent Morton to Jasen Miller |
| Government's Exhibit 10: | FBI Special Agent Trisha Dewet's report of interview with Laura Bresee |
| Government's Exhibit 11: | FBI Special Agent Trisha Dewet's reports of interview with Jasen Miller |
| Government's Exhibit 12: | Photograph of telephones available for inmate use at the Western Reception Diagnostic and Correctional Center |
| Government's Exhibit 13: | Photograph of telephones available for inmate use at the Western Reception Diagnostic and Correctional Center |
| Government's Exhibit 14: | Photograph of telephones available for inmate use at the Western Reception Diagnostic and Correctional Center |
| Government's Exhibit 15: | Photograph of directions for use of telephone at the Western Reception Diagnostic and Correctional Center |

Government's Exhibit 16: Photograph of directions for use of telephone at the Western Reception Diagnostic and Correctional Center
Government's Exhibit 17: Photograph of directions for use of telephone at the Western Reception Diagnostic and Correctional Center
Government's Exhibit 18: Photograph of orientation packet for inmates at the Western Reception Diagnostic and Correctional Center
Government's Exhibit 19: Photograph of orientation packet for inmates at the Western Reception Diagnostic and Correctional Center
Government's Exhibit 20: Photograph of orientation packet for inmates at the Western Reception Diagnostic and Correctional Center

Defendant objected to the Court's jurisdiction and elected not to cross examine the Government's witnesses or offer exhibits or witnesses of his own.

## *II. EVIDENCE*

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1. Defendant was placed on probation following a conviction in the State of Missouri. As part of this probation, Defendant met with Probation and Parole Officer Hope Peterson for supervision visits on a monthly basis beginning in August of 2006 (Tr. at 32, 34). The meetings took place at 1730 Prospect, Kansas City, Missouri (Tr. at 32).

2. When an individual arrives for a supervision visit, he or she enters the waiting room and signs in with a clerical staff member (Tr. at 32). The doors to the waiting room are not locked (Tr. at 33). The individual then waits until a probation and parole officer escorts the individual to his or her office (Tr. at 32, 33). The doors to the office area are locked to prevent entrance but, once inside, individuals can exit freely (Tr. at 33).

3. During Defendant's October 7, 2008 meeting with Ms. Peterson, Defendant told Ms.

Peterson about a bonded promissory note process (Tr. at 34-35). Ms. Peterson believed the process was fraudulent and contacted law enforcement (Tr. at 5-6, 35).

4. Kansas City, Missouri Police Department Detective Kent Morton was contacted by FBI Special Agent Benton (Tr. at 16). Special Agent Benton asked Detective Morton to conduct a trash pull at 2450 Elmwood (Tr. at 17).

5. The trash pull was conducted on October 30, 2008 (Tr. at 18). Detective Morton drove by 2450 Elmwood at approximately 6:00 a.m. (Tr. at 18-19). The trash had not yet been placed on the curb, so he continued to monitor the residence (Tr. at 19). At approximately 8:00 a.m., Detective Morton noticed the trash was on the curb (Tr. at 19). The trash bags were recovered and Detective Morton inspected the contents (Tr. at 19). Much of the contents was related to Defendant (Tr. at 20).

6. FBI Special Agent Nathan VanSickle and Kansas City, Missouri Police Detective Morton asked Ms. Peterson make a audio/video recording of one of Defendant's supervision visits (Tr. at 7, 35). After obtaining approval from her supervisor, Ms. Peterson agreed to do so (Tr. at 7, 20, 35).

7. The recorded visit occurred on November 4, 2008 in Ms. Peterson's office (Tr. at 8, 20, 21, 32, 35; Gvt. Exhs. 6, 7). The door to Ms. Peterson's office remained open at all times (Gvt. Exhs. 6, 7). During the meeting, Defendant was free to leave (Tr. at 36). He was not under arrest or in custody at any point (Tr. at 37). Ms. Peterson asked Defendant to explain the bonded promissory note program and Defendant freely volunteered information (Gvt. Exhs. 6, 7). Ms. Peterson did not threaten Defendant or make any promises to Defendant to get him to talk (Gvt. Exhs. 6, 7). At no point did Defendant request an attorney (Gvt. Exhs. 6, 7).

8. On December 3, 2008, the government applied for warrants to search Defendant's Hewlet-Packard computer, Executive Business Systems computer, and ten 3.5 inch diskettes (Tr. at 6; Gvt. Exhs. 1-3). The government applied for a corrected search warrant for the Executive Business Systems computer on December 8, 2008 (Doc. No. 104 at p. 9; Gvt. Exh. 4). United States Magistrate Judge John T. Maughmer issued the warrants (Gvt. Exhs. 1-4). The warrants were executed on December 11, 2008 and returns were made (Tr. at 6; Gvt. Exhs. 1, 3, 4).

9. In February of 2009, the Agent VanSickle learned of Defendant's involvement with a website: www.AmericansRepublicParty.org (Tr. at 8). This website is publically available; individuals do not need a password or have to pay a membership fee to view the website's content (Tr. at 9).

9. Through his investigation, Agent VanSickle determined www.AmericansRepublicParty.org was registered to Bob Suppenbach; registration fees were paid by Shirley Oyer (Tr. at 10).

10. Agent VanSickle saved documents posted on www.AmericansRepublicParty.org (Tr. at 10-12). He also saved video that were accessed through links on the website (Tr. at 12-13).

11. FBI Special Agent Trisha DeWet obtained a number of audio files from www.AmericansRepublicParty.org (Tr. at 48). The website has a TalkShoe link that contains audio files about different topics (Tr. at 48). These audio files are publically available (Tr. at 48). Agent DeWet opened and saved the files as TS-327910, TS-329202, TS-352271, TS-352881, TS-396859 and TS-Denny 201639 (Tr. at 48).

12. Additionally, the Kansas City, Missouri Police Department saved two audio recordings from the website in March of 2009 (Tr. at 29). The recording labeled TS-202339 contains Defendant's voice (Tr. at 30). The male voice on the second recording, TS-202431, was not identified (Tr. at 30). These audio recordings were publically available (Tr. at 30).

13. On September 28, 2009, the government applied for a search warrant for the website www.AmericansRepublicParty.org (Gvt. Exh. 5). United States Magistrate Judge John T. Maughmer issued the warrant (Gvt. Exh. 5). The warrant was executed on September 29, 2009 and a return was made (Gvt. Exh. 5).

14. Defendant's probation was ultimately revoked and he was incarcerated at the Western Reception Diagnostic and Correctional Center (Tr. at 22). Detective Morton contacted the Missouri Department of Corrections and requested copies of Defendant's telephone calls and Defendant's incoming and outgoing mail (Tr. at 22-23; Gvt. Exh. 9).

15. The Western Reception Diagnostic and Correctional Center posts notices on the telephones that inform persons in custody that phone calls will be recorded (Tr. at 23; Gvt. Exh. 11). The notices, depicted in Government's Exhibits 12-20 state, "Calls are subject to recording and monitoring." (Tr. at 52; Gvt. Exhs. 15-17, 20). When inmates make a call, a recording plays advising the inmate that calls can be monitored for investigative purposes (Gvt. Exh. 11). Inmates are also provided a handbook that sets forth the rules concerning incoming and outgoing mail (Gvt. Exh. 11). The handbook states that mail can be searched and utilized for investigative purposes (Gvt. Exh. 11).

16. During the period the FBI was investigating Defendant, Defendant corresponded with the FBI by mail (Tr. at 13). The FBI never asked for any documentation from Defendant; Defendant provided the documentation at his own behest (Tr. at 13).

17. Timothy Hermsen is an Assistant Special Agent in Charge with the U.S. Department of Education, Office of the Inspector General (Tr. at 38). Before acting in this capacity, Agent Hermsen was a special agent (Tr. at 38). As a special agent, he investigated violations of federal law related to U.S. Department of Education programs (Tr. at 38).

18. While conducting such investigations, Agent Hermsen became familiar with Defendant's bonded promissory note program wherein Defendant mailed a bonded promissory note to the U.S. Department of Education in an attempt to pay off student loan debts (Tr. at 41-42).

19. Agent Hermsen obtained documents from the Missouri Department of Higher Education as part of his investigation (Tr. at 43). These documents included a bonded promissory note related to Defendant's personal student loans (Tr. at 43). Agent Hermsen learned Defendant voluntarily mailed the bonded promissory note to the Missouri Department of Education after receiving a tax offset letter informing Defendant his loans were in default (Tr. at 44).

20. Agent Hermsen also received a call from an agent in Dallas, Texas (Tr. at 45). The agent had been contacted by the Texas Guaranteed Student Loan Corporation concerning a suspicious payment on a loan for a Dennis Shaver (Tr. at 45). The original bonded promissory note had been mailed to a law firm that, in turn, forwarded it to the Texas Guaranteed Student Loan Corporation (Tr. at 45-46). The

law firm is not a government agency (Tr. at 46).

21. Agent DeWet obtained recordings of telephone calls and mail from when Defendant was in custody at the Federal Medical Center in Englewood, Colorado (Tr. at 48-49; Gvt. Exh. 10). The Federal Medical Center posts notices on the telephones used by inmates advising them that calls can be monitored (Gvt. Exh. 10). Additionally, inmates are provided and required to sign an acknowledgment that informs them their calls can and will be monitored and that their mail is subject to monitoring as well (Tr. at 50; Gvt. Exh. 10). All incoming mail is opened and checked for contraband and outgoing mail is always monitored (Gvt. Exh. 10).

22. After Defendant mailed a package to the Federal Medical Center's Warden threatening to file a lien, Defendant's mail was placed on special monitoring (Gvt. Exh. 10). Special monitoring means that incoming and outgoing mail is inspected (Gvt. Exh. 10).

### III. LEGAL ANALYSIS

The evidence that the Government plans to use in its case-in-chief falls within seven main categories. Each category is analyzed separately below.

**A. Search Warrants**

Defendant seeks to suppress "all evidence" in this case on grounds that the Government was "acting without a proper warrant." (Doc. No. 76). Defendant argues that (1) the search warrants were issued without an underlying criminal complaint (Doc. No. 76) and (2) FBI Special Agent Nathan Vansickle is not a federal law enforcement officer so could not "lawfully sign an affidavit establishing probable cause under Rule 41" (Doc. No. 96). Defendant's arguments are without merit.

9

The Federal Rules of Criminal Procedure do not require a criminal complaint to be on file before a search warrant is issued.  A criminal case may be initiated by a complaint, indictment or information; a complaint is not required in all cases.  See Fed. R. Crim. P. 3, 7.  However the criminal case is initiated, Rule 41 provides that a search warrant can be issued by a magistrate judge based on an affidavit presented by a federal law enforcement officer that establishes probable cause.  Fed. R. Crim. P. 41.

Defendant does not argue that probable cause was lacking.  Instead, he argues that the affiant, Federal Bureau of Investigation Special Agent Nathan VanSickle, "is not a 'Federal Law Enforcement Officer,' but a mere 'corporate employee'" (Doc. No. 96).  Federal Rule of Criminal Procedure 41(a)(2)(C) defines "federal law enforcement officer" as "a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within the category of officers authorized by the Attorney General to request a search warrant."  It is well recognized that a FBI agent is a federal law enforcement officer.  28 U.S.C. § 533.  Defendant's motion to suppress should be denied.

**B.  Statements to Probation Officer**

The Government plans to introduce statements Defendant made to his state probation officer, Hope Peterson.  I find that Defendant was not in custody, that his statements were voluntarily made, and that Defendant never told Ms. Peterson he would like an attorney.

In Miranda v. Arizona, the United States Supreme Court held that in order for statements obtained during a custodial interrogation to be used at trial, law enforcement officers must have first advised the defendant of his or her Constitutional rights.  384 U.S. 436, 444 (1966).  Miranda warnings are thus only required when a suspect is interrogated

while in custody. United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir. 1992); United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990); Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989)(citing Rhone Island v. Innis, 446 U.S. 291, 300 (1980)). Custody occurs either upon formal arrest or any other circumstances where the suspect is deprived of his freedom of action in any significant way." Griffin, 922 F.2d at 1347 (emphasis omitted). Determination of whether an individual is in custody involves examination of whether "a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." Id.

In Minnesota v. Murphy, the United States Supreme Court held that a probationer was not in custody when he met with his probation officer at her office pursuant to an order. 465 U.S. 420, 429-34 (1984). See also United States v. Holmes, 594 F.2d 1167, 1171 (8th Cir. 1979); United States v. Andaverde, 64 F.3d 1305, 1310-11 (9th Cir. 1995). Like the defendant in Murphy, Defendant met with Ms. Peterson in her office. The door to Ms. Peterson's office remained open throughout the entire supervision visit. Defendant was not arrested or restrained in anyway. Additionally, Defendant was able to freely exit the office area. Because Defendant was not in custody, Miranda warnings were not required.

Defendant's statements to Ms. Peterson should not be suppressed on grounds that they were involuntary. A statement is voluntarily given when, in light of the totality of the circumstances, the defendant made the statement on his own accord rather than as a result of succumbing to improper pressure from law enforcement officers. See Davis v. North Carolina, 384 U.S. 737, 739 (1966). In determining if a statement was voluntarily given, courts consider whether the statement "was extracted by threats, violence or direct

11

or implied promises, such that the defendant's 'will [was] overborne and his capacity for self-determination critically impaired.'" United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995)(citations omitted).

In this case, Defendant freely shared information about his bonded promissory note program with Ms. Peterson. Ms. Peterson did not threaten Defendant or make any promises to get him to do so. My review of the November 4, 2008 supervision visit (Government's Exhibits 6 and 7) reveals Defendant's will was not overborne and that his capacity for self-determination was not impaired.

Lastly, a statement can be suppressed if it is obtained in violation of the Sixth Amendment's right to counsel. See Massiah v. United States, 377 U.S. 201, 206 (1964). Defendant did not request an attorney during his November 4, 2008 supervision visit with Ms. Peterson. Defendant's motion to suppress should, therefore, be denied.

**C.     Recorded Telephone Calls**

Defendant's telephone calls where recorded while he was in both state and federal custody. Although "Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521, generally prohibits the recording of oral or wire communications without a warrant and prohibits admission of such recordings into evidence," exceptions to this general prohibition exist. United States v. Horr, 963 F.2d 1124, 1125-26 (8th Cir. 1992). One such exception is inmate consent. Id. at 1126. An inmate's consent to telephone conversations being recorded may be implied. Id. See also United States v. Morin, 437 F.3d 777, 780-81 (8th Cir. 2006)(holding defendant impliedly consented to taping of jailhouse calls where defendant had been given handbook which informed him

calls would be monitored and signs above prison phones informed him of the same).

Defendant was in state custody at the Western Reception Diagnostic and Correctional Center. This institution posts notices on the telephones that "Calls are subject to recording and monitoring." When an inmate places a call, a recording again notifies the inmate that calls can be monitored for investigative purposes. Defendant's telephone calls were also recorded when he was in federal custody at the Federal Medical Center in Englewood, Colorado. The Federal Medical Center similarly posts notices on inmate telephones that state telephone calls can be monitored. Inmates are additionally required to sign an acknowledgment advising them that calls can and will be monitored. I find that Defendant consented to his calls being recorded by placing calls after receiving notice of the respective monitoring policies. As a result, Defendant's motion to suppress should be denied.

**D.     Documents and Recordings Posted on the Internet**

As part of its case-in-chief, the Government plans to use audio and video recordings posted on www.AmericasRepublicParty.org of both Defendant and Melinda Harrington discussing bonded promissory notes as well as various documents also posted on the website.

I first note that the Government obtained a search warrant for www.AmericasRepublicParty.org on September 28, 2009 (Gvt. Exh. 5). Because law enforcement downloaded documents and recordings from the website before the search warrant was issued, I will also conduct a Fourth Amendment analysis.

The Fourth Amendment protects against "unreasonable searches and seizures," but its protections can only be asserted by persons having a legitimate expectation of privacy

in the place searched. United States v. Kuenstler, 325 F.3d 1015, 1020 (8th Cir. 2003); United States v. Shafer, 608 F.3d 1056, 1064 (8th Cir. 2010); United States v. Delaney, 52 F.3d 182, 188 (8th Cir. 1995). The Fourth Amendment provides no protection, however, "for what 'a person knowingly exposes to the public.'" Pace v. City of Des Moines, 201 F.3d 1050, 1053 (8th Cir. 2000)(quoting United States v. Dionisio, 410 U.S. 1, 14 (1973)). An individual does not have a legitimate expectation of privacy in the contents of a publically-available website. See, e.g., McCarthy v. Barrett, No. 3:09-CR-5120-RBL, 2011 WL 3159052 at *15 (W.D. Wash. July 26, 2011); United States v. Gines-Perez, 214 F. Supp. 2d 205, 225 (D. Puerto Rico 2002).

In this case, www.AmericasRepublicParty.org is publically accessible. Viewers do not need to pay a fee or possess a password to access the website's content in its entirety. Defendant does not have a legitimate expectation of privacy in either the documents posted to the website or the audio/video recordings in which he discusses the bonded promissory note procedure. Furthermore, "Fourth Amendment rights are personal and may not be asserted vicariously." United States v. Green, 275 F.3d 694, 698 (8th Cir. 2001). Defendant thus may not challenge the audio/video recordings of Melinda Harrington obtained from www.AmericasRepublicParty.org. Defendant's motion to suppress should be denied.

**E.    Trash Pull**

The Government also plans to introduce evidence obtained from an October 30, 2008 trash pull. "Police may search trash left outside the curtilage of the house to be picked by garbage collectors, because the owners of the trash have abandoned it." United States v. Spotted Elk, 548 F.3d 641, 653-54 (8th Cir. 2008)(citing California v. Greenwood,

486 U.S. 35, 40-43 (1988)).  The warrantless search of abandoned property does not violate the Fourth Amendment.  United States v. James, 353 F.3d 606, 615-16 (8th Cir. 2003); United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997); United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994).  Here, police lawfully collected trash bags from the curb of 2450 Elmwood.  I recommend that Defendant's motion to suppress be denied on this ground.

**F.  Correspondence with Law Enforcement and the Courts**

As stated above, the Fourth Amendment protects against unreasonable searches and seizures.  "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.  A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  United States v. Jacobsen, 466 U.S. 109, 113 (1984)(citations omitted).  This protection only proscribes governmental action; "it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'"  Id. (citations omitted).

Defendant does not have a reasonable expectation in correspondence he sent to the Government.  Indeed, he intended for the correspondence to be received by the Government.  The correspondence Defendant mailed to the law firm in Texas, likewise, is not subject to Fourth Amendment protection since the law firm was not acting as an agent of the Government.  The Government should be permitted to use this evidence at trial.

**G.  Defendant's Mail**

The Government obtained copies of Defendant's incoming and outgoing mail while

he was in state and federal custody. A prisoner's Fourth Amendment rights "are not violated when his mail is inspected by jail officials." United States v. Kelton, 791 F.2d 101, 103 (8th Cir. 1986). See also Ortiz v. Fort Dodge Correctional Facility, 368 F.3d 1024, 1026 (8th Cir. 2004)(("While prisoners have a right to send and receive mail, prison officials have a legitimate interest in monitoring that mail for security reasons."); Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991)("the inspection of nonprivileged mail does not violate a prisoner's constitutional rights"). Here, the Western Reception Diagnostic and Correctional Center and the Federal Medical Center in Englewood, Colorado copied Defendant's mail and provided it to the Government. Both facilities had previously notified Defendant that his mail would be subject to monitoring. The Federal Medical Center began monitoring Defendant's incoming and outgoing mail after Defendant threatened to file a lien against the warden. Defendant's motion to suppress should be denied on this ground.

## IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

The parties are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 18, 2011