# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 10-00131-01-CR-W-FJG |
| Denny Ray Hardin, | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE (Doc. #76) filed on June 6, 2011, by defendant Denny Ray Hardin ("Hardin"). The sole remaining issue before the Court[1] is the possible suppression of statements Hardin made during the execution of two search warrants. On August 10, 2011, the undersigned held an evidentiary hearing on the remaining issue from Hardin's motion. Hardin was present and appeared *pro se*. Travis Poindexter appeared as standby counsel for Hardin. The government was represented by Assistant United States Attorneys Brian Casey and Patrick Daly. At the evidentiary hearing, the government called two witnesses, Special Agent Nathan Van Sickle with the FBI and Detective Kent Morton with the Kansas City Missouri Police Department. Hardin chose not to cross-examine either witness and presented no evidence.

---

[1] Several of the issues raised in Hardin's motion are being handled by Magistrate Judge Robert Larsen, to whom the motion was referred by the District Court. However, Judge Larsen determined that three issues discussed in Hardin's motion arose out search warrants he issued. Those three issues were transferred to this Court for consideration. In a REPORT AND RECOMMENDATION [Doc. 134], the Court addressed two of the issues (relating to the validity of search warrants), but determined the issue relating to statements made by Hardin during the execution of the search warrant required an evidentiary hearing.

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

**PROPOSED FINDINGS OF FACT**

1. On November 4, 2008, Nathan Van Sickle, Special Agent with the Federal Bureau of Investigation and Kent Morton , a detective with the Kansas City Missouri Police Department, undertook to serve a search warrant, 08-SW-00132-REL ("the 132 warrant"), on Hardin. Tr. at 6-7, 17, 19.

2. The 132 warrant authorized law enforcement officers to search Hardin's person and seize a black composition book. Tr. at 7-8.

3. Simultaneously to the execution of the 132 warrant, other law enforcement officers were executing a second search warrant, 08-SW-00133-REL ("the 133 warrant"), authorizing a search of Hardin's residence. Tr. at 7-8, 14-15.

4. Acting upon information received regarding a meeting that Hardin had scheduled, Special Agent Van Sickle and Detective Morton traveled to the State of Missouri Department of Probation and Parole at 1730 Prospect in Kansas City, Missouri, on November 4, 2008. Tr. at 8, 19.

5. Upon seeing Harding in the parking lot at 1730 Prospect, Special Agent Van Sickle and Detective Morton approached Hardin and asked him several questions. Tr. at 8-9.

6. The parking lot was an open air public parking lot with public street ingress and egress and surrounding public sidewalks. Tr. at 8-9, 20.

7. During the interview, Hardin was free to leave and was never told that he could not leave. Tr. at 11, 14, 20.

8. During the interview, Hardin was not arrested, handcuffed, or otherwise restrained. Tr. at 11, 14, 16, 20.

9. During the interview, Hardin was not threatened and the interview was conducted in a conversational, non-aggressive, non-threatening tone. Tr. at 11-12.

10. During the interview, Hardin was responsive to all of the questions asked of him. Tr. at 12.

11. At the conclusion of the interview, Special Agent Van Sickle and Detective

Morton informed Hardin of the 132 warrant. Tr. at 13.

12. Hardin handed over a black composition book to the officers. Tr. at 13.

13. Hardin was then informed that officers were also executing the 133 warrant at Hardin's residence. Tr. at 13.

14. Hardin and the officers (in separate vehicles) then traveled to Hardin's residence. Tr. at 14-15, 21-22.

15. When the search of Hardin's residence was completed (which occurred shortly after Special Agent Van Sickle and Detective Morton arrived at the residence), Hardin came out of his house and told the departing officers that they were thieves and robbers who had stolen his money. Tr. at 15, 22.

16. Hardin's comments were not made in response to any question posed by a law enforcement officer. Tr. at 15-16.

17. As the officers proceeded to drive away from the Hardin residence, Hardin extended his middle finger at the officers. Tr. at 16, 22.

## PROPOSED CONCLUSIONS OF LAW

The Fifth Amendment commands that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. With regard to the Fifth Amendment, the Supreme Court has found:

> The essence of this basic constitutional principle is the requirement that the [government] which proposes to convict and punish an individual produce the evidence against him by the independent labors of its officers, not by the simple, cruel expedient of forcing it from his own lips.

*Estelle v. Smith*, 451 U.S. 454, 462, 101 S.Ct. 1866, 1872 (1981). However, as the Supreme Court has also made clear on numerous occasions, the right against self-incrimination does not prohibit any and all statements made by suspects to law enforcement officers from being admissible in a criminal proceeding. For example:

> [The Fifth Amendment] does not preclude a witness from testifying voluntarily in matters which may incriminate him, . . . for those competent and freewilled to do so may give evidence against the whole world, themselves included. . . . Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable.

*U.S. v. Washington*, 431 U.S. 181, 186-87, 97 S.Ct. 1814, 1818 (1977). The touchstone of such Fifth Amendment analysis is voluntariness. *Dickerson v. U.S.*, 530 U.S. 428, 434, 120 S.Ct. 2326, 2331 (2000) ("We . . . continue to exclude confessions that were obtained involuntarily.").

With regard to statements made by a suspect during custodial interrogation by law enforcement, the Supreme Court, in the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), enunciated a special test for ascertaining voluntariness. The reason for such special treatment stems from the Supreme Court's recognition that custodial interrogations are inherently coercive. *Dickerson*, 530 U.S. at 435, 120 S.Ct. at 2331; *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 2630 (1984). Indeed, in *Miranda,* the Supreme Court observed that custodial interrogations, by their very nature, generate "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624. Consequently,

> To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused.

*Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 1140 (1986). These procedures, now almost universally familiar, include fully apprising a suspect of the prosecution's intention to use his statements to secure a conviction and informing him of his rights to remain silent and to have counsel present if he so desires. *Miranda*, 384 U.S. at 468-70, 86 S.Ct. at 1624-26.

In this instance, Hardin was not apprised on his *Miranda* rights prior to responding to the inquiry conducted by Special Agent Van Sickle and Detective Morton on parking lot of the Probation and Parole building (nor was Hardin apprised of his *Miranda* rights at the scene of the search of his residence). However, as noted, *Miranda* itself is only triggered by custodial interrogation. In this case, the Court concludes that the protections of *Miranda* were not implicated because Hardin was not in custody at the time he was questioned by Special Agent Van Sickle and Detective Morton.

The ultimate question in determining whether a person is in "custody" for purposes of *Miranda* is "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520 (1983). Moreover, the "only relevant inquiry" in considering that question is how a reasonable person in Hardin's position would have understood his situation. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151 (1984). *See also Yarborough v. Alvarado*, 541 U.S. 652, 660-65, 124 S.Ct. 2140, 2147-50 (2004). In making that evaluation, the Court must consider the totality of the circumstances that confronted Hardin at the time of questioning. *United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002).

To ascertain whether a defendant can be deemed to have been in custody, the Eighth Circuit has developed a non-exhaustive list of six "coercive factors" to be considered by a court:

> (1) whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest;
>
> (2) "whether the suspect possessed unrestrained freedom of movement during questioning;"

(3) whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities;

(4) "whether strong arm tactics or deceptive stratagems were employed during questioning;"

(5) whether there was a police-dominated atmosphere; and

(6) "whether the suspect was placed under arrest at the termination of the questioning."

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). Reviewing the totality of the circumstances as demonstrated by the testimony presented at the hearing, the Court concludes that the *Griffin* factors do not support a finding that Hardin was in custody when Special Agent Van Sickle and Detective Morton questioned him in the parking lot.

Although Hardin was not specifically told that he was not under arrest, neither Special Agent Van Sickle nor Detective Morton insinuated that Hardin was under arrest either. Hardin was unrestrained during the questioning and the scene with the two officers questioning Hardin in a open air, public setting was not police-dominated. *Compare United States v. Martin*, 369 F.3d 1046, 1057 (8th Cir. 2004) (suspect not in custody because "the atmosphere of the interview was not police-dominated [in that] two agents interviewed [the suspect] in a public place"). Moreover, Hardin readily answered the questions put to him and neither Special Agent Van Sickle nor Detective Morton employed any tricks or strong arm tactics. Finally, Hardin was not immediately arrested after the questioning.

Inasmuch as *Miranda* has no application, the sole issue is whether Hardin made his statements voluntarily. The Court concludes that the evidence establishes voluntariness. Under these facts, the Court will not suppress Hardin's statements to Special Agent Van Sickle and Detective Morton made in the parking lot of the Probation and Parole building.

For similar reasons, the Court concludes that the statements made by Hardin at the scene of the search of his residence should also not be suppressed. In addition to the fact that the Hardin was not in custody for purposes of *Miranda*; the evidence shows that the statements made by Hardin were not the product of any interrogation. Statements made by a defendant that are "not the product of either express questioning or its functional equivalent" do not fall within the ambit of *Miranda*. *See*, *e.g.*, *United States v. Briones*, 390 F.3d 610, 613 (8th Cir. 2004). Moreover, the fact that Hardin made the statement unsolicited establishes the voluntariness of the statements.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** that portion of the MOTION TO SUPPRESS EVIDENCE (Doc. #76) that seeks suppression of Hardin's statements.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                        */s/ John T. Maughmer*
                                        **JOHN T. MAUGHMER**
                                        **U. S. MAGISTRATE JUDGE**